It's quite remarkable how this case has come this far, considering that the Commissioner's own doctor has stated that, based on the record as a whole, the treatment records, etc., that and somehow it got past the initial phases, went to the ALJ level, where the ALJ is confronted with the consultative examiner's opinions that she could do medium work, compared with the state agency doctor's opinion that she could do light exertion. And the ALJ invokes the general rules, and the ALJ stated that he specifically rejected the state agency doctor's opinions because it is just contradicted by the consultative examiner's opinions. And he is just invoking a general rule where it is just a starting point. You then look at the facts and then determine whether that general rule is applicable or not. And in Social Security ruling 96-6P, it states that the general rule changes when the state agency doctor does something that the consultative examiner does not, where, for example, the state agency doctor looks at the record, the treatment records, and looks at basically the entire record available at that time, which the consultative examiner did not do in this case. And in those instances, the state agency doctor's opinions is then entitled to greater weight than the consultative examiner's. So by invoking the general rule in violation of 96-6P, the ALJ committed error. Yes. When we look, when we review, what do we look for? Do we re-weigh, re-decide, say, oh, we like this position's opinion better, or do we look to see if there's evidence in the record to support the finding? As a general proposition, yes. If there are alternate reasonable interpretations, then it's as case law stated. So before you quickly move away, there's just no doubt that somebody found a, the examining physician found a capable of medium work, didn't, isn't that so? That's correct. And I gather when you started that you were starting from a premise that the only finding was that she's capable of slight, she's, so that everybody's wrong for saying she's capable of more. There's a finding. You want us to decide how much weight to give it? Well, the facts of everything as a whole. Like, for example, in the instance where a treating doctor might say that this person is, let's say, you know, functionally limited and disabled, but then you have to look at everything else. Is it brief and conclusionary? Is his opinion supported by, for example, objective studies, clinical findings? If they are, then you give the treating doctor's opinions greater weight. And in this case, the same thing is true. You look at the other factors. Did the consultative examiner look at the records, the other volume of treatment records that were available at that time? And using those factors, then you determine whose opinions are entitled to greater weight. And the ALJ didn't do that. He just, he just assumed that you have examining physician, non-examining physician, that this doctor's automatically entitled to greater weight, and we're going to give this doctor's opinions, we're going to credit as true. The premise that the ALJ took was incorrect to begin with. And it also goes to the substantial evidence test as well. In determining a claimant's residual functional capacity, the commissioner in ruling 96AP states that the RFC must be based on the entire record as a whole. Now, the consultative examiner, his viewpoint of Maria Mejia is just one particular day, as opposed to this agency doctor who has looked at Maria Mejia through a long period of time based on the record as a whole. And beginning with those premises, the ALJ's rejection of the agency doctor's opinions is just incorrect. The other basis that the ALJ or the commissioner has taken is that the ALJ then looked at the other records and then decided for himself that these other records did not support a medium versus light exertion, which I would disagree with because as the regulations state, an ALJ's duties are only so far, they can only go so far. When it comes to interpreting medical evidence, for example, the ALJ can say the treating doctor's opinions is correct because he did state that he has, for example, a decreased range of motion. But when it comes to assessing how severe a condition is, that is something that an ALJ simply cannot do. And this is supported by NYSERDA case law as well as a lot of other circuits that have said the same thing, is that the ALJ cannot usurp the rule of the medical expert. The ALJ can adduce greater evidence from the treating doctor. He can order a consultative examination. He can adduce testimony from a medical expert. But simply eyeballing a treatment record and then saying, oh, well, I think this is more consistent with light work as opposed to medium work, that is simply something that the ALJ just cannot do. Then we get to, well, in that way that I would ask the court to credit these agency doctors' opinions as true and then invoke grid rule 202.01 and 202.09 for finding that she is disabled. And I guess I'll reserve the rest of my time for it. Okay. Well, thank you. Thank you, counsel. Good morning, Your Honors. Nancy Olszewski for the Commissioner of Social Security. In this case, the claimant is suggesting that somehow the state agency physician's opinion is binding. And he also seems to suggest that the ALJ permissibly was playing doctor. However, in this case, substantial evidence supports the ALJ's finding that claimant retained the ability to perform medium work. Generally, more weight is given to the report of an examining physician than to a non-examining physician. And even if doctors disagree, which they often do, it's the ALJ's job to weigh the medical evidence. And this Court has repeatedly held that, for example, in Thomas v. Barnhart. In this case, the ALJ properly evaluated and relied on the conclusions of Dr. Tamiri and rejected the conclusions of the unnamed state agency physician. The ALJ gave particular weight to the mild objective findings and the assessment of Dr. Tamiri together with the consistent clinical evidence. It's significant here that despite claimant's representation by counsel, no other evidence suggests a more favorable residual functional capacity. As noted by the district court, there's no treating physician here who suggested disability or a more limited functional capacity. Significantly, the report by the state agency physician, as well as the consultative examination, both took place in January of 2000. Did the state's doctor examine Mr. Mejia, Ms. Mejia, or only the reports? He was non-examining. Actually, I'm not sure if it was a he. It's an unnamed, illegible signature, but just examined the records. So the state's doctor who reports that she's disabled never actually saw her? He didn't actually report that she was disabled. He reported that she could do light work. Light work. And found that she, but did not find her disabled. Found that by being able to do light work, she could actually do her past work, I believe. In this case, there are treating and examining records dating from after January 2000, and they only go to support the findings of Dr. Tamiri. For example, the ALJ noted that plaintiff, excuse me, claimant went to the emergency room in March of 2001, complaining of chest pain. The treating physician there, Dr. Lowe, noted that it was most likely anxiety and atypical chest pain, and in the other records, plaintiff's chest pain is also described as atypical, and she turned down cardiac catheterization. And also after these, also after January 2000, Dr. Wiener did a radiological consult and found no abnormality in plaintiff's heart or lungs. He only found that she had some slight thickening of the aorta. And what's also significant here is that Dr. Tamiri noted that the physical examination revealed a heart murmur, which suggested mitral valve disease. So he fully considered this clinical manifestation when he assessed her functional limitations. Significantly here, SSR 96.6p says that the ALJ must consider the state agency physician's opinion. He did that here. He considered the opinion, weighed the evidence, and determined that more weight should be given to the consultative examiner as well as to the treating record, which did not suggest any limitations greater than medium capacity. Your Honor, that's all I have, unless you have any questions. We do. Mr. Cho? Thank you, Counsel. Mr. Cho, what do we do with the fact that the unnamed state doctor did not actually examine Ms. Mejia? Yes. And as a starting point, the analysis is that the consultative examiner's opinions are greater than the state agency doctor's, unless the state agency doctor does look at the record as a whole. But he never even examined her. Yes, but the Commissioner's articulation in ruling 96.6p does state that in those instances where the non-examining doctor does look at the record as a whole, the other doctor does not, then the weight in which they're given is actually switched, that the non-examining doctor's opinion is entitled to greater weight. And that would be because the state doctor had access to records that Dr. Tamiri did not have access to? Right. By Dr. Tamiri's own admission, he did not review any of the treatment records that were available to the state agency doctor. Just one thing about the objective evidence that Ms. Leshefsky has pointed to, is that the chest x-ray that was apparently negative is that the state agency doctor once again also saw that x-ray study and the consultative examiner's report, and in addition to the treatment records, did find evidence of mitral valve prolapse with mitral regurgitation. In other words, this is just another example of how judges, well, ALJs can look at medical records and make assumptions when they're just simply not true, that they should not be in the role of, as I kind of stated before, is usurping the role of the medical experts. You should leave it to the doctors to make assessments as to how severe a condition is, and this is a perfect example of that. And I don't have anything further.
judges: Farris, Thompson, Bybee